# In the United States Court of Federal Claims

No. 24-480

Filed: January 7, 2026

| | |
|---|---|
| MICHAEL G. MEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

*Brian D. Schenk*, Midwest Military & Veterans Law, PLLC, Minneapolis, Minn., for plaintiff.

*Natalee Allenbaugh*, United States Department of Justice, Civil Division, Washington, D.C., for defendant.

**ORDER AND OPINION**

*SMITH*, **Senior Judge**

    In the United States military, service members injured to the point of disability are supposed to be entered into the Disability Evaluation System ("DES"). The DES is an objective, multistep process in which the service branch determines whether the member is fit or unfit for duty; if unfit, whether the Service member is meant to receive a disability retirement; and whether the Service member's injuries are combat related. The relevant criteria for entering a service member into DES is simple: he must be injured to the point he cannot perform his military specialty for one year.

    Lieutenant Colonel Meyer was injured to the point he could not perform his military specialty for a year; however, the United States Air Force did not send him to DES. Lieutenant Colonel Meyer had to retire on his own accord and petition the Air Force Board for the Correction of Military Records ("AFBCMR") to correct his status to disability retired. The AFBCMR refused and Lt. Col. Meyer then filed this suit in the Court of Federal Claims. The AFBCMR decision to deny Lt. Col. Meyer disability retirement was arbitrary, capricious and unsupported by substantial evidence. Lieutenant Colonel Meyer's motion for judgment on the administrative record is **GRANTED**. *See* ECF No. 12. Defendant's cross-motion for judgment on the administrative record is **DENIED**. *See* ECF No. 17. The case is **REMANDED** to the AFBCMR for further proceedings not inconsistent with this decision.

I.      **Factual History**

Lieutenant Colonel Meyer was a fighter pilot for the United States Air Force Reserve. *See* Admin. Rec. [hereinafter AR] 43, 106, 126, ECF No. 9. His Air Force Specialty Code ("AFSC") through his entire career was 11F3H, F-16 pilot. AR at 43. An 11F3H "[p]ilots aircraft and commands crew. Operates aircraft and controls equipment. Performs, supervises, or directs navigation, inflight refueling [], and weapons delivery." Air Force Classification Directory, 29, Fighter Pilot ¶ 2.2, AR App'x at 32. During a training mission, Lt. Col. Meyer sustained injuries and was disabled, resulting in the loss of his flying status. AR at 40. At the time of his injury, Lt. Col. Meyer was with the 69th Fighter Squadron, 994th Fighter Wing. *Id.*

The DES is the United States Department of Defense's ("DoD") policy and procedure to determine "whether a service member is fit for duty or should be retired or separated due to disability. *Keltner v. United States*, 165 Fed. Cl. 484, 487 (2023); *See generally*, Dep't of Def. Instruction (DoDI) 1332.18 (Aug. 5, 2014) (incorporating May 17, 2018, changes), Admin. Rec. App'x [hereinafter AR App'x] at 1523–80, ECF No. 22. The DES is a complex collection of rules, directives, instructions, and manuals promulgated by the Secretary of Defense and the secretaries of the military departments. *See Keltner*, 165 Fed. Cl. at 488 ("describing the DES as byzantine is an understatement that may be unkind even to that ancient empire").

Service members proceed through either the Legacy DES or the Integrated DES ("IDES"). DoDI 1332.18 ¶ 3(b), AR App'x at 1523–24. Though each military department writes its DES policy, the standards "for all determinations related to disability evaluation will be consistently and equitably applied, … to all Service members, and be uniform within the components of the Military Departments." DoDI 1332.18 ¶ 3(c), AR App'x at 1524.

Military medical authorities will refer eligible service members to the DES who "[h]ave one or more medical conditions that may, individually or collectively, prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating, including those duties remaining on a Reserve obligation for more than 1 year after diagnosis." DoDI 1332.18, encl. 3, app'x 1 ¶ 2(1), AR App'x at 1548. *See also* 10 U.S.C. §§ 1201–03. In DES, the service member will appear before a Medical Evaluation Board ("MEB") review, undergo a disability evaluation including a Physical Evaluation Board ("PEB") review, counseling, case management and a final disposition on the member's fitness or unfitness. DoDI 1332.18, encl. 3, AR App'x at 1537–47. The process runs concurrently with the United States Department of Veterans Affairs ("VA"). DoDI 1332.18 ¶ 3(g), AR App'x at 1524. If the member served at least twenty years and has a VA disability rating of 30% or more, he is entitled to disability retirement status and pay. 10 U.S.C. § 1201.

The Air Force employs a two-step IDES prescreening process for all referrals. Air Force Manual (AFMAN) 41-210, TRICARE Operations and Patient Admin. [*hereinafter* AFMAN 41-210] ¶ 4.48.1.2, AR App'x at 1148. The first step an evaluation by the Deployment Availability Working Group ("DAWG"), the second step is accomplished by a referral by the Air Force

Personnel Center or Air Reserve Component Surgeon General to a MEB and IDES. *Id.* If an airman has a condition rendering him unable to deploy or causing him a mobility restriction for 365 days or longer, he must undergo an initial review-in-lieu-of ("IRILO"), which serves as his IDES pre-screen. *Id.* An IRILO is triggered when an airman receives a diagnosis "which does not meet retention standards for continued military service." AFMAN 41-210 ¶ 4.49.1.1, AR App'x at 1149. The trigger event is reviewed by the DAWG, which will either order an IRILO if it finds the airman is fit for restricted duty or needs to go before a MEB, or it will find the airman is fit for duty and dismiss the case. AFMAN 41-210 ¶ 4.49.2, AR App'x at 1150.

Lieutenant Colonel Meyer received a diagnosis inconsistent with retention standards, but the Air Force failed to follow its procedures. Broken down, Lt. Col. Meyer's claim arises from five key events.

### A. Lt. Col. Meyer is Injured in the Line of Duty

On February 5, 2018, while undertaking a "solo Air Combat maneuvering sortie" under a heavy gravitational load, Lt. Col. Meyer felt a pop in his neck and a "feeling of fire" that started in the back of his neck and traveled down his right arm to his hand. *Id.* at 38–39. Suffering intense pain and numbness, Lt. Col. Meyer was able to recover his aircraft and land safely. *Id.* at 39–40. His squadron commander, Lt. Col. Killeen, immediately placed Lt. Col. Meyer on Duties Not Including Flying ("DNIF") status. *Id.* at 41. The Air Force determined that Lt. Col. Meyer suffered a Line of Duty ("ILOD") injury. *Id.* at 40–42.

Between February and April 2018, Air Force and civilian medical personnel evaluated and treated Lt. Col. Meyer's injuries. *Id.* at 45–58. Doctors diagnosed Lt. Col. Meyer with dynamic instability and moderate to severe spinal stenoses at the C4/C5 level. *Id.* He had a disc protrusion at C4/C5 and could not rotate his neck to the left without causing pain. *Id.* at 47–48. He had cervical radiculopathy and spondylosis at C4/C5. *Id.* at 51. The Air Force prohibited him from flying for a year and he was in physical therapy until the following January. *Id.* at 129–30.

### B. Lt. Col. Meyer is Moved to a Staff Position and Referred to Disability Processing

On February 10, 2019, the Air Force medically disqualified Lt. Col. Meyer and terminated him from the aviation service. *Id.* at 3, 104. Three months later, Lt. Col. Killeen's Commander's Impact Statement assessed that Lt. Col. Meyer was unable to perform all of his primary AFSC in-garrison duties, and he would never be able to maintain wartime mission-capable status, meet medical readiness standards, or complete a physical fitness test. *Id.* at 41. Although supportive of a waiver to fly a "low-G" aircraft, Lt. Col. Killeen determined Lt. Col. Meyer would "remain in a non-deployable status [and] not be able to cross train in a 'low-G' airframe without being able to deploy in that airframe." *Id.*

Lt. Col. Meyer was transferred to a nonflying position, where he performed "additional duties to include teaching academics and performing supervisor of flying duties." *Id.* However,

3

Lt. Col. Killeen determined that "after being on DNIF status for greater than 365 days, [Lt. Col. Meyer] is required by AFI to be removed from a flying billet and is not able to perform any additional duties to support the mission requirements of his AFSC." *Id.* Lt. Col. Meyer was non-deployable and not wartime mission capable for 16 months. *Id.* at 42. Citing "Non-Deployable Airmen Retention Determination Policy Guidance (AFGM2019-36-01)" and AFI 36-3212, Lt. Col. Killeen referred Lt. Col. Meyer to the Disability Evaluation System. *Id.* at 43. *See also* Air Force Instruction 36-3212, Physical Evaluation for Retention, Ret., and Separation, § 1.3 (2009), AR App'x at 386.

On July 25, 2019, the 994th Medical Squadron ("994th MS") conducted an Aeromedical Summary and issued Lt. Col. Meyer a FC IIC waiver, for "non-high performance, non-ejection seat, multiplace aircraft." AR at 67. However, the flight surgeon deemed it unlikely that he would be deployable in such aircraft. *Id.* at 71. The Aeromedical Summary concluded that Lt. Col. Meyer's condition had improved, but "not to a point that he will ever be able to resume flight activities in a high G aircraft," making it "clear that he will not be able to fly a [F-16] viper again." *Id.* The Department of Veterans Affairs assigned Lt. Col. Meyer's service-related injuries a combined 80% disability rating. *Id.* at 78, 88–91.

On November 14, 2019, the 994th MS conducted a Medical Evaluation Board Narrative Summary ("NARSUM"), which acted as Lt. Col. Meyer's IRILO. *Id.* at 92–98. The NARSUM adopted the Aeromedical Summary's prognosis that Lt. Col. Meyer would never be able to fly an F-16 again. *Id.* at 94. The NARSUM found Lt. Col. Meyer was not able to carry or fire a weapon, was restricted to home base, could not perform "all major components of the Physical Fitness Test and is not-deployable due to his current restrictions." *Id.* The NARSUM noted that according to the "[Medical Standards Directory] K8 v. 11 June 2019 and AFI 49-123" Lt. Col. Meyer's conditions and restrictions were "disqualifying for retention." *Id.* at 93. *See also* USAF Med. Standards Directory (June 11, 2019) § K8, AR App'x at 1782.

### C. Lt. Col. Meyer is Returned to Duty after the IRILO

On December 19, 2019, the Air Force Reserve Command Surgeon General ("AFRC/SG") deemed Lt. Col. Meyer medically qualified and returned him to duty with an indefinite assignment limitation code ("ALC") C1 restriction. AR at 97. Lt. Col. Meyer was limited to "unit training assemblies [], annual tours [], and mandays" and he was deployable "only to DoD installations with fixed medical treatment facilities." *Id.* Lt. Col. Killeen disagreed with AFRC/SG's decision in a letter to the AFBCMR and stated that the decision was contrary to DES standards, and that Lt. Col. Meyer should have been referred to a MEB. *Id.* at 99–100. Lt. Col. Killeen reiterated his determination, based on his "responsibility as a commander to evaluate airmen who are not wartime mission capable," that Lt. Col. Meyer is unfit to perform the duties of his office as an Air Force Lieutenant Colonel And F-16 Instructor Pilot. *Id.*

Despite Lt. Col. Killeen's letter Lt. Col. Meyer was issued a DD Form 2992, Medical Recommendation for Flying or Special Operational Duty, which cleared him for flight duty,

restricted to non-high-performance aircraft without ejection seats but he was "[n]ot cleared for flight duties with the F-16 and F-35." *Id.* at 102.

### D. Lt. Col. Meyer Retires and Petitions the Corrections Board

On March 15, 2018, Lt. Col. Meyer completed the required twenty years of military service and was thus eligible to retire. *See* AR at 105; 10 U.S.C. § 12731. Unable to fly an F-16 and with reclassification or reassignment to another aircraft or squadron "not feasible," Lt. Col. Meyer could no longer fly for the Air Force. AR at 99, 126–27. On October 31, 2020, Lt. Col. Meyer retired from the Air Force and transferred to the Retired Reserve list. *Id.* at 103. One month later, Lt. Col. Meyer petitioned the AFBCMR, requesting that his records be corrected to reflect that he was entered into IDES on or about May 21, 2019, found unfit by a PEB, and he be placed on a permanent disability retired list. *Id.* at 11–32. Lt. Col. Meyer also requested the AFBCMR classify his disabilities as resultant from a combat-related injury. AR at 28–29. *See also* 26 U.S.C. § 104.

### E. The AFBCMR Denies Lt. Col. Meyer's Petition

The AFBCMR solicited two medical advisory opinions in preparation for Lt. Col. Meyer's case.[1] *See* AR at 106–09, 128–34. The first opinion recommended against medical retirement for Lt. Col. Meyer and argued that his injury was not combat-related because it occurred in a non-hostile environment. *Id.* at 106–09. On January 22, 2022, Lt. Col. Meyer responded to this opinion, arguing that AFMAN 41-210 mandated his referral to the DES because he could not perform his duties as an F-16 pilot. *Id.* at 115–17. Lt. Col. Meyer further argued that his disability was combat related because aerial flight duty is "hazardous service" and the F-16 he was piloting qualifies as an "instrumentality of war" under DoDI 1332.18. *Id.* at 120–21.

The second opinion [hereinafter Second Advisory Opinion] argued that referring Lt. Col. Meyer to the DES was not mandatory because although unable to pilot an F-16, he was able to perform "other parameters" of his:

> 'Office' (A position of duty, trust, and authority to which an individual is appointed); 'Grade' (A step or degree in a graduated scale of office or military rank that is established as a grade by law or regulation); and 'Rank' (The order of precedence among members of the military services).
> *Id.* at 9, 132–34.

On the second issue, whether the injury was combat related, the medical advisor "amended his prior response and opine[d] that … clearly the criteria of aerial flight, airborne operations and caused by a military weapon are irrefutable." *Id.* at 134.

---

[1] The record is unclear as to whether the first and second medical advisory opinions were authored by the same individual. Nonetheless, the Court's analysis remains the same.

On April 27, 2022, the AFBCMR decided against correcting Lt. Col. Meyer's record. *Id.* at 2–10. Although it found Lt. Col. Meyer was no longer able to pilot an F-16, he was still able to perform all tasks integral to a Command Staff position and additional duties overlapping with a fighter pilot position description. *Id.* The AFBCMR did not reach the issue of whether Lt. Col. Meyer's injury was combat-related. *Id.*

## II.     Procedural History

On March 29, 2024, Lt. Col. Meyer filed his complaint with this Court. *See generally* Complaint, ECF No. 1 [hereinafter Compl.]. The complaint seeks correction of Lt. Col. Meyer's military records, disability retirement pay, and attorney's fees. *Id.* at 24. On November 8, 2024, Lt. Col. Meyer filed his Motion for Judgment on the Administrative Record. *See generally* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 12 [hereinafter Pl.'s MJAR]. The United States timely filed its Cross-Motion and Response. *See generally* Defendant's Cross-Motion for Judgment Upon Administrative Record and Response, ECF No. 17 [hereinafter Def.'s MJAR]. Lieutenant Colonel Meyer timely filed his Response and Reply. *See generally* Plaintiff's Response to Defendant's Cross-Motion for Judgment Upon the Administrative Record and Reply to Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 20 [hereinafter Pl.'s Resp.]. The United States replied on April 10, 2025. *See generally* Reply to Response to Motion re Motion for Judgment on the Administrative Record, Cross-Motion and Response to Motion for Judgment on the Administrative Record, ECF No. 21 [hereinafter Def.'s Reply]. On June 4, 2025, the Court held oral argument on the parties' briefing.

## III.    Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over non-tort money-mandating claims against the United States. *See* 28 U.S.C. § 1491(a)(1). While the Tucker Act "constitutes a waiver of sovereign immunity" of the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212 (1983), it alone "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). A plaintiff seeking money damages against the United States under the Tucker Act must "identify a separate source of substantive law that creates the right to money damages." *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). It is well established that military retirement pay statutes are money-mandating. 10 U.S.C. § 1204; *Fisher*, 402 F.3d at 1172–75.

## IV.     Standard of Review

When evaluating a motion for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), this Court conducts its factual finding as if it were carrying out a trial on paper and enters judgment accordingly. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–57 (Fed. Cir. 2005). It is "well established that judicial

6

review of decisions of the military correction boards is conducted under" the Administrative Procedure Act. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009).

Board decisions can be set aside if they are arbitrary, capricious or not based on substantial evidence. *Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (quoting *Chappell v. Wallace*, 462 U.S. 296, 303 (1983)). The arbitrary and capricious standard "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (emphasis in original).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether the conclusion is supported by substantial evidence, "all the evidence must be considered, whether or not it supports the challenged conclusion." *Heisig*, 719 F.2d at 1157. A plaintiff must show "by cogent and clearly convincing evidence" that the Board's decision failed to meet the standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Cl. Ct. 626, 633 *cert. denied* 414 U.S. 1032 (1973)).

The Court presumes the validity of military personnel decisions, and the plaintiff must overcome this presumption by establishing that the correction board's decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States,* 333 F.3d 1354, 1355 (Fed. Cir. 2003)); *Armstrong v. United States*, 205 Ct. Cl. 754, 762–63 (1974). The decisions of the boards are entitled to "a strong presumption that military officials, including those sitting on [correction boards], have acted in accordance with the law." *Cameron v. United States*, 106 Fed. Cl. 551, 560–61 (2012). The Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach different conclusions on the same evidence." *Heisig*, 719 F.2d at 1156. However, a court "may decide whether the military has complied with procedures set forth in its own regulations because those procedures … limit the military's discretion." *Fisher*, 402 F.3d at 1177. If a board's decision "lacks any coherence," it is entitled to no judicial deference. *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (overturning a decision by the Army Board for Correction of Military Records ("ABCMR") which affirmed a decision to prematurely end a medical review board as arbitrary and capricious under the APA).

## V.     Discussion

The Court is presented with two questions: (1) whether the AFBCMR's decision that Lt. Col. Meyer was fit to return was to duty arbitrary, capricious, contrary to law, or unsupported by substantial evidence; and (2) whether Lt. Col. Meyer's injuries were combat related. The Court answers both questions in the affirmative.

**1. The AFBCMR's Decision was Arbitrary, Capricious, and Unsupported by Substantial Evidence**

If an Air Force service member believes he has been denied his full entitlement to disability benefits, he may petition the AFBCMR. *Pipes v. United States*, 123 F.4th 1324, 1326 (Fed. Cir. 2024). The Secretary of a military department, acting through boards of civilians, "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." *Id.* at 1326 n.1 (quoting 10 U.S.C. § 1552(a)(1)). Boards of correction may make "a disability determination in the first instance" when a PEB is not convened. *Ford v. United States*, 172 Fed. Cl. 300, 311 (2024) (quoting *Sawyer v. United States*, 930 F.2d 1577, 1581 (Fed. Cir. 1991)).

In the Air Force, a "Service member will be considered unfit when the evidence establishes that the member, due to disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating, including those during a remaining period of Reserve obligation." DoDI 1332.18, encl. 3, app'x 2, ¶ 2(a), AR App'x at 1552. Lt. Col. Meyer was unable to perform the duties of his office, grade, rating, or rank when he could no longer fly an F-16.

First, the AFBCMR contends that 10 U.S.C. § 1203 and DoDI 1332.18 should be read holistically, and the inability to perform one category does not disqualify a service member from another. *See* Def.'s MJAR at 17. Defendant contends that Lt. Col. Meyer's inability to fly should not be dispositive when he could perform some supervisory duties. *Id.* at 18–19. Defendant argues that the categories should be read together such that the inability to perform one would not trigger DES. *Id.* Defendant cites no authority as to why the terms should be read holistically and, in any event, is incorrect. Each term has an individual meaning and therefore an individual basis for which a service member may be found unfit. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) ("'[O]r' is 'almost always disjunctive'"). In construing a statute, courts are "obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Here, "office" carries a different definition from "grade," which is different from "rank," which is different from "rating." *See* DoDI 1332.18, Glossary, AR App'x 1579; AR at 132. If the Court were to read the terms holistically, services branches could disqualify service members from DES if there were any duties within any category they could perform. *See* DoDI 1332.18 ¶ 3(c), AR App'x at 1524. *See also FCC v. Pacifica Found.*, 438 U.S. 726, 739–40 (1978) (rejecting a broadcaster's argument that its "Filthy Words" broadcast did not violate 18 U.S.C. § 1464 (1976), which forbid the broadcast of "any obscene, indecent, or profane language" because the language broadcast was obscene but not indecent).

Defendant's construction of DoDI 1332.18 and 10 U.S.C. §§ 1201–04 runs afoul of various decisions of this Court. In *Thomas v. United States*, this Court held an AFBCMR decision denying an airman disability retirement for PTSD was arbitrary and capricious when it failed to properly weigh his duty limiting conditions and his inability to fully perform his rating as a Security Forces airman. 175 Fed. Cl. 47, 68 (2025). In *Jeanpierre v. United States*, this Court held the ABCMR

denial of disability retirement arbitrary and capricious to a soldier suffering PTSD. 176 Fed. Cl. 11 (2025). The Court was not convinced by the ABCMR's fitness decision when it failed to explain how a soldier's inability to carry a weapon did not affect the performance of his military duties. *Id.* at 33–34. In *O'Hare v. United States*, a Navy Hospital Corpsman with a traumatic brain injury was assigned to a naval hospital after returning to the United States from overseas service. 155 Fed. Cl. 364, 371 (2021). Placed on limited duty for six months, O'Hare was able to complete the administrative tasks of his role, but he separated from service when his enlistment expired. *Id.* at 371. He petitioned the Board for Correction of Naval Records ("BCNR") for disability retirement, which was denied. *Id.* This Court agreed with the BCNR because O'Hare was able to complete his assigned duties of his office, grade, rating, or rank as a corpsman in a hospital, which were administrative in nature. *Id.* at 374–75. The *O'Hare* Court determined it should follow the services' descriptions of jobs and noted that O'Hare was released from service "[without] limitations" and was able to reenlist without restrictions. *Id.* at 371, 374–75.

Second, the record does not support a reading that Lt. Col. Meyer was able to perform the duties of his office and rating. The ability to perform administrative tasks as part of a limited duty assignment" is insufficient for a fitness determination. *Nyan v. United States (Nyan I)*, 153 Fed. Cl. 234, 242–43 (2021) *recons. on other grounds (Nyan II)*, 154 Fed. Cl. 463 (2021). In *Nyan*, a Navy Informal Physical Evaluation Board (IPEB) determined a Corpsman, rank of E4, rating of HM3 was not unfit for duty despite his medical conditions rendering him unable to (1) take the Navy physical fitness test; (2) nondeployable; and (3) unable to perform the specialized duties because of his medical conditions.[2] *Nyan I*, 153 Fed. Cl. at 242. The Navy based its determination upon the comments in one performance review, which characterized HM3 Nyan's ability to perform administrative tasks, and not those of his rating, as exceptional.[3] *Id.* at 242. The court held that the Navy failed to take into consideration HM3 Nyan's rating, and instead looked to whether he was able to perform "any and all work a Hospital Corpsman might be assigned." *Id.* at 243. However, an E4 hospital corpsman is "*expected* to perform a wide range of duties that went beyond sitting at a desk doing paperwork." *Id.* (emphasis in original). An E4 HM3 is "normally assigned duties involving direct patient care and to clinical services or [on-the-job training] in the more advanced clinical procedures." *Id.* (quoting NAVMED P-117 ch. 9 at 9-7).

HM3 Nyan's responsibilities before his limited duty were not administrative in nature. *Id.* at 244. HM3 Nyan's commander's nonmedical assessment ("NMA") found that Nyan's health "did not allow him to fully perform all duties and aspects of his rate at shore or sea commands." *Id.* at 245. The court found the IPEB "ignored Navy regulations that required it to give significant

---

[2]  HM3 Nyan did not go before the BCNR, so the court reviewed the findings of the IPEB. Nyan, 153 Fed. Cl. at 242.

[3]  The Navy's disability evaluation process, governed by, SECNAVINST 1850.4E, mirrors the Air Force's. Nyan at 237–38. The process begins with a MEB, which can refer unfit members to an Informal PEB, then a PEB. *Id.* at 238. The "'sole standard' the PEB applies in 'making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rating, or rank because of disease or injury occurred or aggravated while entitled to basic pay.'" *Id.* at 238 (quoting SECNAVIST 1850.4E, encl. 3 § 3301 (2002)).

weight to the NMA" and held that the IPEB's fitness determination was inconsistent with the standards set forth in the Navy's fitness determinations. *Id.* at 244–45; (*cf. O'Hare*, 155 Fed. Cl. at 375–76, in which there were no records indicating that O'Hare was unable to perform his duties aside from his temporary restriction.) Consequently, the Court found the fitness determination "not supported by substantial evidence" and instructed the BCNR if it found any condition unfitting for HM3 Nyan's office, grade, rank, or rating to provide a disability retirement rating to "decide the appropriate disability rating for each unfitting condition and whether or not the unfitting condition was permanent and stable at the time of his discharge from the Navy." *Nyan II*, 154 Fed. Cl. at 468.

The Navy also made an arbitrary and capricious fitness determination in *Kelly v. United States (Kelly II)*, 69 F.4th 887 (Fed. Cir. 2023). There, an E4 diver second class (ND2) suffered head trauma during a dive in 2010 and hypoxia and decompression during a dive in 2012. *Id.* at 892. ND2 Kelly exhibited emotional and behavioral changes because of his injuries; his Second-Class Navy Diver classification was removed and ND2 Kelly was assigned maintenance duties. *Id.* at 893. ND2 Kelly was administratively separated for disorderly conduct, a discharge which was later upgraded to "fully honorable." *Id.* Once ND2 Kelly received his discharge upgrade, he applied to correct his records to reflect disability retirement under 10 USC § 1201. *Id.* The BCNR denied his request, but this Court disagreed, and remanded to "consider whether Mr. Kelly was able to reasonably perform common duties of his office, grade, rank, or rating," but alternately concluded that ND2 Kelly was not eligible for DES because of the nature of his separation. *Kelly v. United States (Kelly I)*, 157 Fed. Cl. 114, 124–35 (2021).

On appeal, Court of Appeals for the Federal Circuit upheld the *Kelly I* decision that the BCNR decision was arbitrary and capricious. *Kelly II* at 895–96. Specifically, the BCNR failed to "consider all relevant criteria in SECNAVIST 1850.4E § 3304" in determining "whether Mr. Kelly's medical condition affected his deployability or special qualifications as a navy diver." *Id.* at 896. The Federal Circuit held the full evaluation of all the criteria is important "because a decision under that section affects other related determinations, such as the establishment of a final disability rating under 10 U.S.C. § 1216a(b) (accounting for all medical conditions that render a member unfit to perform the duties "of the member's office, grade, rank, or rating"), and under 10 U.S.C. §§ 1201–1203." *Id.*

On remand, the BCNR again denied Kelly's disability retirement request. *Kelly v. United States (Kelly III)*, __ Fed. Cl.__, 2025 WL 2952627 at *4 (Fed. Cl. Oct. 20, 2025). The Court of Federal Claims upheld the BCNR's decision because ND2 Kelly was able to perform his office, grade, rating or rank, in part because his restrictions were regulatory, not medical. *Id.* at *3–*4. The BCNR, this time considering all relevant criteria, found that Kelly could perform his common military tasks up to his suspension for disorderly conduct. *Id.* at *11.

Here, Lt. Col. Meyer is a 11F3H, Fighter Pilot, much like HM3 Nyan was a Hospital Corpsman and ND2 Kelly was a Navy diver. Lieutenant Colonel Meyer's duties and responsibilities required him to pilot an F-16 and deliver weapons. AR App'x at 32. Similar to

HM3 Nyan and in contrast to ND2 Kelly, Lt. Col. Meyer was unable to fulfill his responsibilities because of his disability. Even when Lt. Col. Meyer improved, it was "not to a point that he will ever be able to resume flight activities in a high G aircraft." AR at 71. The Air Force MEB NARSUM found Lt. Col. Meyer's injuries "disqualifying for retention" and that even though his waiver for a "non-ejection seat aircraft" was reasonable, it was unlikely that he would be deployable in that aircraft-type. *Id.* at 92–94. Lt. Col. Meyer's FC-IIC waiver for a "non-high performance, non-ejection seat, multiplace fighter aircraft" was for an aircraft that did not exist, and thus Lt. Col. Meyer was "not able to do his duty as an 11F." *Id.* at 101. While defendant makes much out of the MEB NARSUM's determination that Lt. Col. Meyer was able to complete all the command staff tasks he was assigned, it ignores the strict limitations – limits on lifting, no prolonged standing or walking, no running, and no carrying or firing a loaded weapon. Def.'s MJAR at 18–19; AR at 94. Further, unlike in *O'Hare*, where a corpsman was transferred to a hospital and was able to complete the tasks assigned there, Lt. Col. Meyer had no prospects for transferring to another aircraft or unit. AR at 99. Lt. Col. Meyer's main duties as a fighter pilot in a fighter squadron were to fly F-16s, something he could not do.

      Defendant tries to distinguish Lt. Col. Meyer from *Nyan* and instead relies on *Bee v. United States*. 2024 WL 3912596 (Fed. Cl. Aug. 23, 2024). In *Bee*, a Marine infantry staff sergeant (E-6), Military Occupational Specialty ("MOS") 0311, was wounded and suffered post-traumatic stress disorder from multiple deployments to Afghanistan. *Id.* at *1. When SSgt. Bee returned from his final deployment the Marine Corps changed his MOS from 0311 – rifleman to 0369 – infantry unit leader. *Id.* Staff Seargent Bee's final role was as a military instructor where he received exemplary performance reviews. *Id.* at *2. Staff Seargent Bee voluntarily separated from service, was released "[without] limitations," and was honorably discharged. *Id. See also O'Hare*, 155 Fed. Cl. at 371. He received 100% disability rating from the Department of Veterans Affairs. *Bee* at *2. SSgt. Bee then petitioned the BCNR to change his discharge from voluntary separation to medical retirement, which was denied. *Id.* at *2–*3.

      Lt. Col. Meyer's case is distinguishable from *Bee*. The BNCR found the SSgt. Bee to have "'performed first-class physical and combat fitness tests' while serving as an instructor." *Id.* at *11. Staff Seargent Bee maintained "core and core plus skills for a 0300 Basic Infantry Marine … which include training and qualification on standard service weapons." *Id.* Further, SSgt. Bee never "lost or lacked a special qualification." *Id.* In short, up to his discharge from service, SSgt. Bee participated in "combat-related activities" which were "a far cry from the administrative duties the [BCNR] improperly focused on in *Kelly*." *Id.* at *12.

      Finally, SSgt. Bee's medical reports that he relied on were inconsistent with his military medical record and "provided nothing to support the conclusion that that his conditions interfered with his ability to perform duties appropriate to his office, grade, rank, or rating." *Id.* at *16–*17 (cleaned up). The Court found "the most compelling evidence that Plaintiff could perform the duties of his office, grade, rank, or rating, at the time of discharge, is that he was, in fact, capably performing the duties of his office, grade, rank, or rating at the time of discharge." *Id.* at *19.

11

This is not Lt. Col. Meyer's situation. Whereas SSgt. Bee maintained his core and core plus skills and did not lose a special qualification, Lt. Col. Meyer was unable to perform his core duties and lost his flight qualifications. He was given a waiver for a nonexistent type of aircraft and was unable to transition to or deploy on another type of aircraft. In contrast with SSgt. Bee's circumstances, Lt. Col. Meyer's "conditions interfered with his ability to perform the duties appropriate to his office, grade, rating, or rank." *Id.* at *16–*17.

The decision of the AFBCMR denying Lt. Col. Meyer disability retirement was arbitrary, capricious, and unsupported by substantial evidence. Further, the Air Force failed to follow its own procedures in processing Lt. Col. Meyer's disability. Lieutenant Colonel Meyer could not perform his duties, scant evidence supports AFBCMR's decision that he could.

### 2. Lt. Col. Meyer's Disability is Combat-Related

Lieutenant Colonel Meyer alleges that he suffered qualifying combat related injuries involving a military combat vehicle. Compl. ¶ 78. For a service member to suffer qualifying combat-related injuries, they must have been caused by one of four events: (1) an instrumentality of war; (2) hazardous service; (3) armed conflict; or (4) conditions simulating war. *See* DoDI 1332.18 encl. 3, app'x 5, ¶ 2(b), AR App'x at 1570.

At issue here is whether Lt. Col. Meyer's disabling injuries were caused by an instrumentality of war. *Id.* A disability arising from this situation must incur because of wounds caused by a military weapon or "accidents involving a military combat vehicle" and must establish "a direct causal relationship between the instrumentality of war and the disability." *Id.* ¶ 2(b)(4), AR App'x at 1570. Lieutenant Colonel Meyer meets both factors because his injuries were sustained while piloting an F-16 fighter jet.

First, Lt. Col. Meyer was injured during a solo flight training mission in an F-16, an obvious military combat vehicle, and felt a pop in his neck while maneuvering the jet under heavy gravitational force. AR at 40–44, 94. As a result of the F-16 incident, Lt. Col. Meyer incurred a disability, radiculopathy and degenerative disc disease, contributing to his 80% VA disability rating. *Id.* at 45–46, 80. Thus, Lt. Col. Meyer satisfies the first criterion.

Second, no party disputes that Lt. Col. Meyer endured heavy gravitational forces while flying his F-16; the Air Force, in the Second Advisory Opinion, conceded, "the criteria of aerial flight, airborne operations, and injury caused by a military weapon are irrefutable." AR at 40–44, 135–136; *cf. Adams v. United States*, 126 Fed. Cl. 645, 652, 659 (2016), *aff'd,* 696 F. App'x 511 (Fed. Cir. 2017) (upholding an AFBCMR decision denying combat-related disability retirement to an Air Force major who was injured, and eventually rendered unable to fly, from a bicycle accident on his way to work, which was neither combat related or a combat vehicle). Unlike the bicycle injuries in *Adams*, Lt. Col. Meyer's injuries have formed a direct causal relationship between the instrumentality of war and his disability.

While the Court recognizes that the AFBCMR never reached a decision on Lt. Col. Meyer's combat related injuries, his foraminal stenosis would be found combat related by the Physical Evaluation Board regardless of the Corrections Board's erroneous decision that returned him back to duty.  Def.'s MJAR at 20; AR at 136.  The Court holds, due to an accident involving an F-16, Lt. Col. Meyer's disability was combat related.

VI.     **Conclusion**

Lt. Col. Meyer's injuries were disabling, disqualifying from service, and combat related. The decision of the AFBCMR is arbitrary, capricious, and unsupported by substantial evidence. Therefore, Lt. Col. Meyer's motion for judgment on the administrative record is **GRANTED**, defendant's motion for judgment on the administrative record is **DENIED**, and the matter is **REMANDED** to the AFBCMR for further proceedings not inconsistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge